case number 20-7033. Mykola Ivanenko et al. appellants versus Viktor Yanukovich et al. Mr. McCallion for the appellants, Mr. Shaw for the appellate government of Ukraine. Good morning, counsel. Counsel for appellants, do you wish to start? Yes, good morning. May it please the court. Kenneth McCallion for plaintiff appellants, Luke's Express, the Alamo group, also including Mr. and Mrs. Ivanenko. We believe the district court's decision and order should be reversed as to all appellants. However, we believe the clearest case for reversal is as to the Alamo group, since there is obviously no domestic taking issue there. The Alamo group was and is a U.S.-Georgia-based corporation and a de facto joint venture with Luke's Express in a automobile sales operation, import-export operation, located in Kyiv, Ukraine. The Alamo group had offices there in Ukraine, just as Luke's Express had offices in Atlanta, Georgia, at the Alamo group's offices there. In addition, the Alamo group maintained in the Ukraine property certain automobiles, auto parts, and other inventory, which had been imported into Ukraine from the U.S. In July of 2012, the buildings were destroyed on that property. Also, valuable property was taken by agents and instrumentalities of Ukraine at the direction of an instrumentality, an agency of the Ukraine government, Southwestern Railway. At that time, the property was taken from the Alamo group. This was in violation of international law, not only because they weren't compensated, but it was in direct violation of a bilateral treaty between Ukraine and the United States, whereby the Alamo group and other U.S. companies were reassured to do business in Ukraine, that there would be a judicial remedy available to them in the event that what happened to your property was taken and expropriated. The Ukraine's position, and apparently that of the district court, was that the Alamo group, this U.S. company, does not have recourse under the bilateral treaty, which, by its language, permits an agreed party recourse to the courts of a party to the treaty, Ukraine or the U.S. In this particular case, the Alamo group, as well as the Ukraine defendants, did not have adequate recourse to the Ukraine courts because at this particular time, both the courts and the government were controlled by a pro-Russian, anti-U.S., and anti-Western European government that discriminated against U.S. companies, and the judicial system, the rule of law, was not as vibrant at that particular time, since the courts, as well as the government, were subject to rampant corruption and political influence on the judicial system. So, the taking here for purposes of the commercial exception to the FSIA was not as the district court found. It erroneously found, unfortunately, that the taking was for a public purpose, the construction of a bridge. However, as we argued in our complaints, as well as in our papers, while the ostensible purpose was for the building of a subterfuge, and indeed a bridge was never built, that it was a subterfuge for a commercial purpose, namely the taking of the property and its use for for-profit commercial activity, a sports arena for the personal benefit of some of the individual defendants. The taking here of the Alamo Group's property, as well as that of Luke's Express and the Ukrainian individual plaintiffs, had a direct effect in the United States, which, as the case law indicates, must be and Luke's Express, which maintained an office in Georgia and had to close that after the destruction of its property in Ukraine. The Alamo Group was, in essence, the controlling party of the Ukrainian company Luke's Express, through various loans and financial arrangements, which, of course, Luke's Express could no longer fulfill those obligations, and this led to a devastating cascading effect on Alamo Group, which had significant lines of credit secured by property in the United States, and its business was virtually destroyed. The lion's share of its business was with this Ukraine operation, which was and the inventory taken in July of 2012. I would like to point out that the defendant here, Ukraine, of course, takes the position that this was a domestic taking. We can't apply that argument to the Alamo Group, but it applies it Luke's Express and the individual defendants. However, we would point out that we believe the only way that the bilateral treaty can have any teeth or any impact would be for Alamo Group to have a judicial remedy, and also that Luke's Express and the individual Evenenko plaintiffs who were in the U.S., they sought asylum after death threats were made against them in Ukraine, that they also have a judicial remedy, and that the government of Ukraine really cannot have it both ways. Under a presidential decree actually addressed to this case and one similar case, it issued a presidential decree in 2016 saying that Luke's Express and the Evenenko individual plaintiffs would be considered as foreign entities for purposes of this litigation, which they had pending in the U.S. District Court. And Ukraine argues, well, we call them foreign entities or foreign persons for purposes of this litigation so that the Ministry of Justice could defend the case, but for all other purposes, they are Ukrainian plaintiffs. We would argue that the government cannot have it both ways, that when it defined by statute or a presidential decree, these originally Ukrainian plaintiffs as foreign entities, the object could have been otherwise, but in a sense, they were declaring these to be persona non grata, no longer could have the benefits of they should be treated as foreign entities, not domestic Ukraine entities for purposes of this litigation based upon the actions of Ukraine. As you know, Ukraine has argued both the domestic taking exceptions and the failure of the Alamo group to meet the commercial activities exception. And of course, the Supreme Court more recently has cut back this court in terms of exceptions. Any comment you want to make on that? Sure. We didn't brief the most recent decisions, however, in the Phillips case and in the Simon case, which is back either before the district court in your district. Well, let's put it this way, the court is going to look at the law as it is now. Sure. The law as it is now, the primary takeaway I see the Phillips case, we never argued that this was a human rights case, we argued that it was strictly a property case. So certainly we're alive and well, I think under Phillips and Simon, in that respect, the taking of the property should only be viewed under the lens of the property law. And in this particular case, if you look at both the exceptions under the commercial taking, the commercial activity and the taking section, we believe that we fall within both those activities. And I think this is an important point, which the district court kind of missed and the Ukraine has really picked up on that improperly. While the land itself may have been owned by the Kiev City Council, it's clear from the record that it was the Southwestern Railway clearly an instrumentality, an agency of the Ukraine government that had been tasked to operate this particular land and indeed to negotiate with the defendants over compensation. They actually arrived at an agreement for compensation, but those monies were promptly stolen from the Ukraine Treasury by individual defendants and was no longer available. So it was clearly the commercial activity, both before and after the taking. It was an automobile dealership before, after. It wasn't used for a public purpose, the building of a bridge, the off-ramps. The bridge never happened, at least with regard to this property. What it was used for was a for-profit commercial sports. All right. Well, why don't we hear from counsel for police? I think it's a nice sequoia from those recent Supreme Court cases. And then we'll give you some time on rebuttal. Thank you. Good morning. May it please the court. I'm Robert Shaw of Holland and Knight on behalf of Ukraine. The district court correctly held that this case does not trigger any of the FSIA's narrow exceptions to foreign sovereign immunity. I'll begin with the expropriation exception, because that was the initial focus of the appellant's oral argument. It only applies where property is both taken in violation of international law and that property has a certain nexus to the United States. The appellants who allegedly suffered a taking of their leasehold and the destruction of their And as the Supreme Court explained only last month, the domestic takings rule holds that expropriation from the country's own nationals do not violate international law and therefore do not trigger FSA jurisdiction. Appellant's principle argument on appeal is that this court's decision in Simon versus Republic of Hungary and other cases once recognized an exception to the domestic takings rule for takings attendant to genocide. And appellants made the argument that this genocide exception might be expanded to encompass discriminatory takings and argued that this was somehow a discriminatory taking. As Judge Rogers alluded to during appellant's argument, that entire basis was foreclosed by the Federal Republic of Germany Phillips case, where the Supreme Court held that there is no exception to the domestic takings rule for even genocidal takings. So there cannot possibly be one for merely discriminatory takings. Now, the second argument is that Alamo Group, an American company that allegedly did business with Lux Express 2, would be treated as though it were the parent company of Lux Express. Now, this court has recognized that an American parent company can suffer a taking violation of international law if all of the assets of its wholly owned foreign incorporated subsidiary are wrongfully seized by a foreign government. The problem with this argument isn't the law, it's the fact that Alamo Group is not alleged to have had any ownership interest in Lux Express 2 at the time of the alleged expropriation. Lux Express 2 was wholly owned by Mr. and Mrs. Ivanenko, two Ukrainians. So the domestics taking rule eliminates the application of the expropriation exception almost this entire case. The plaintiff's appellants have resorted to a last-ditch argument in their reply brief, and they contend that office equipment, automobiles, and auto parts that the American appellant, Alamo Group, stored on the property and jointly shared with Lux Express was wrongfully destroyed and or taken by the defendant. Now, this was not the focus of this case up until very recently, but because there's no place left to go for jurisdiction, the case that started out about real estate in Kyiv is now about unspecified automobiles. Now, there are a number of problems with this argument as well. To begin with, there's actually no allegation or evidence that Alamo Group even owned the property, so appellants have failed to actually allege a taking from an American company. But in any event, none of the appellants, including Alamo Group, can possibly satisfy the second prong of the expropriation exception, the need for a nexus between the expropriated property and the United States. In order to trigger the expropriation exception, the property has to be either here in this country or owned and operated by an agency or instrumentality of the foreign state that is engaged in a commercial activity in this country. Now, appellants have not remotely shown that a state-owned company owns or operates the land, much less that a state-owned company is engaged in a commercial activity in this country. There is a suggestion that computers, auto parts and automobiles may have been destroyed by some part of the Ukrainian government. Well, if that's the case, they can't be owned or operated by some state-owned company because they no longer exist. In his opening presentation, an appellant argued that this parcel was originally taken to form a railroad bridge, but that the bridge never got built and now it's been turned into a sports complex. Well, the complaint says the same thing, more or less, but what it doesn't say is that the Southwestern Railway, this alleged agency or instrumentality of Ukraine, currently possesses anything from any of the appellants. It says practically just the opposite, that the Southwestern Railway was there as a pretext to seize this parcel and turn it into a sports complex and really has nothing to do with the events that it did. As the district court correctly found, there's also no concrete allegations that the Southwestern Railway qualifies as an agency instrumentality of the government of Ukraine. It is not alleged to be wholly owned by the government to serve a principally commercial purpose, so we don't have allegations supporting its status as an agency or instrumentality. We don't have allegations supporting the suggestion that it owns or operates any allegedly taken automobiles or anything else. But most importantly, there are no allegations anywhere in the complaint that the Southwestern Railway is engaged in commercial activity in the United States, which of course is the touchstone of the second prong of the expropriation exception. The first time we heard about the Southwestern Railway supposedly acquiring locomotive engines from General Electric was in an appellant's opening brief in this case, and it was accompanied by a request, a far too late request, to amend the complaint to assert these new allegations. Ukraine respectfully suggests that it's a little late if you're opening an appellate brief to be asking for leave to file an amended complaint, especially where the appellant didn't request leave to file an amended complaint below. Appellants also argue the application of the commercial activity exception, which also doesn't apply. Indeed, Judge Rogers squarely addressed the issue in wrong versus the awning provincial government. In that case, this court held that an expropriation is a quintessentially governmental act and non-commercial in nature. And Judge Henderson, in a concurrence in that case, explained that a mere financial loss by a resident of the United States, in this case Alamo Group, does not constitute a direct effect in the United States. So we have here an alleged expropriation. That's a non-commercial act by law. And then we have a mere financial loss to an American party, which doesn't qualify as a matter of law as a direct effect in the United States. Appellants also sort of broadly argue the application of the bilateral investment treaty between the United States and Ukraine and say that unless the court is bound to have jurisdiction over this case, then the treaty is neutered. Just to quickly explain, a bilateral investment treaty gives foreign direct investors a right to pursue their claims in arbitration. And that is the point of that treaty. It does give aggrieved investors the right to also bring court cases in the foreign state. So if you're an investor from the United States and Ukraine, you can bring a claim in Ukraine, but you can't bring a claim in the United States for the purpose of the treaty. Finally, there was some discussion in Helen's opening argument that it was a waiver by virtue of a presidential decree. This gets a little technical, but the reality is that at the time this lawsuit was filed, Ukraine's domestic law didn't contemplate claims being filed against the state in foreign courts by Ukrainians. And so there was no part of the Ukrainian government that was authorized to hire counsel to mount a defense to that sort of unusual case. And so there had to be a presidential decree, which made the technical amendment to the categorized such plaintiffs as foreign for purposes of Ukrainian law in order to authorize the Ministry of Justice to defend this case and another case that was filed at the same time. Finally, the appellants say that the district court erred by refusing to grant jurisdictional discovery. The jurisdictional discovery that was requested, your honors, was just completely blunderbussed in nature. He asked for leave to propound discovery requests, probing all of the economic ties between the United States and Ukraine, obviously hunting for any possible jurisdictional hook. And it was correctly denied. The court did not abuse its discretion in denying that request for leave. Thank you very much, your honor. Thank you. Counsel for appellants, give you a couple of minutes. Yes, thank you very much. I tried to listen very closely and but counsel, I don't think really rebutted the argument that the Alamo Group, a U.S. company, which is not subject to the domestic takings exception, suffered not a derivative loss, but a direct loss, as alleged throughout this litigation. In addition to the taking of the leases, which was the Lutz expressed loss primarily, Alamo Group, as counsel, I think, concedes or alleges that with a foundation in the record that it did have specific equipment and automobiles and auto parts on the premises that were not destroyed, but were taken by the instrumentality, which was that in Council, where can you give me the J.A. site for that for that allegation? I was looking for that, and I believe it's in the reply brief. No, no, no. You said it was an allegation. Isn't it in your complaint? Where in your complaint is that it alleged that automobiles and auto parts were taken? Owned by Alamo and taken. Yes, that would be. Um. The citation I see is the one I immediately see is the affidavit of Ivanenko, which is A361. Um, where it says that Alamo Group maintain automobiles, auto parts and accessories, which were stolen by the defendants. I don't immediately see the reference to the complaint, but this is from the affidavit that submitted in support of the opposition in the court in the court below. We then offered a second amended complaint. And so the references that I can immediately see are in the affidavits of Ivanenko at A361. And Mark Resnick at A354. And I believe they cite to the complaint, but I don't immediately have the U.S. The complaint site to it. If I if I could supplement the record, I will go through the complaint and get that. Shall I proceed? Um, the taking of the Alamo Group's property clearly outside the domestic taking falls within both the commercial activity exception and the takings exception. Under the commercial activity, it had a direct effect on the United States. Uh, the transactions were in dollars between the parties. It impacted the Federal Reserve System and it devastated Alamo Group's business in the U.S. Now, the Southwestern Railway, which counsel alluded to and I did as well. Um, after the district court decision had been rendered and we were in an appellate context, it came to our attention and we put it into our brief, the public citation to a commercial railway purchase by Southwestern Railway, which of millions, if not billions of dollars of locomotive equipment from GE here in the U.S. And under the commercial activity definition under 1303 D, commercial activity can be a continuing course of of conduct or it can be a single act. And we would argue that, um, we have established through the public record here, uh, that purchase by Southwestern Railway. So the focus here is not so much on the leases itself, which would be part of the claim of Loose Express, but on the, uh, taking of the Alamo Group, uh, which itself suffered damages, not derivative damages. We believe that, um, the court, um, uh, there is no claim here of genocide, as counsel says, and clearly we're within the scope of Phillips with regard to a property damage, uh, exception. Uh, and as to the nationality, which we believe is an open issue here, and we would respectfully request that the matter be remanded for further proceedings so that in fact, counsel, which has not, uh, which is that appellant, which has set forth a good faith basis now of a commercial activity by on appeal here, that the matter should be remanded. We did not sit on our rights. We raised it here. Uh, all right, counsel. Yes, I think we get your point. Um, unless my colleagues have any questions, I think we'll take the case under advisement.
judges: Henderson, Rogers, Randolph